1 BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (State Bar No. 26202)
2 E-mail: mblecher@blechercollins.com
DONALD R. PEPPERMAN (State Bar No. 109809)
3 E-mail: dpepperman@blechercollins.com
515 South Figueroa Street, 17th Floor
4 Los Angeles, California 90071-3334
Telephone:  (213) 622-4222
5 Facsimile:  (213) 622-1656

6 Attorneys for Plaintiffs
VEROS SOFTWARE, INC.
7 VEROS REAL ESTATE SOLUTIONS, LLC

```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                              FEB 2 7 2008

                          CENTRAL DISTRICT OF CALIFORNIA
                          BY                      DEPUTY
```

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                        SOUTHERN DIVISION

12

| | |
|---|---|
| VEROS SOFTWARE, INC., a California Corporation, both in its individual capacity and derivatively on behalf of Real Party-In-Interest VEROS REAL ESTATE SOLUTIONS, LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> FIRST AMERICAN CORPORATION, a California Corporation; FIRST AMERICAN REAL ESTATE SOLUTIONS, L.P., a Delaware Limited Partnership; FIRST AMERICAN REAL ESTATE SOLUTIONS, LLC, a California Limited Liability Company, and VEROS REAL ESTATE SOLUTIONS, LLC, a Delaware Limited Liability Company (Nominal Defendant), <br><br> Defendants. | CASE NO. SACV 06-1130 JVS (Anx) <br><br> [PROPOSED] VERIFIED SECOND AMENDED COMPLAINT SEEKING DAMAGES AND EQUITABLE RELIEF FOR: <br><br> 1)  ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT; AND <br><br> 2)  DIVESTITURE FOR VIOLATION OF SECTION 7 OF THE CLAYTON ACT |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    Plaintiff VEROS Software, Inc. ("VEROS SW") directly, and

2    derivatively on behalf of Plaintiff VEROS Real Estate Solutions, LLC

3    ("VEROS RES") (collectively "Plaintiffs") complains and alleges as follows:

4                                            I.

5                        **JURISDICTION AND VENUE**

6        1.  Count One of this Second Amended Complaint is an action to

7    recover damages pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15)

8    and to secure injunctive relief pursuant to Section 16 of the Clayton Act (15

9    U.S.C. § 26) for Defendants' violations of Section 2 of the Sherman Act (15

10   U.S.C. § 2.)  Count Two is an action seeking divestiture and other

11   equitable relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26)

12   for Defendants' violations of Section 7 of the Clayton Act (15 U.S.C. § 18).

13       2.  This Court has original jurisdiction over the federal antitrust claims

14   pursuant to 28 U.S.C. § 1337 and 28 U.S.C. § 1351. Venue is proper in

15   this District pursuant to 15 U.S.C. § 15(a) and 28 U.S.C. § 1391(b)(1)-(3),

16   (c).  Each Defendant transacts business and is found within the District of

17   California, Southern Division.  The derivative claims are brought pursuant

18   to Fed. R. Civ. P. 23.1

19       3.  For purposes of the derivative action claims, Plaintiff VEROS SW

20   had a 70% stock ownership interest in Plaintiff VEROS RES at the time

21   Defendants' unlawful practices were committed.

22       4.  This action is not a collusive one and is not brought for the

23   purpose of conferring jurisdiction on a district court of the United States

24   which it would not otherwise have.

25       5.  Plaintiff VEROS SW as a corporation and the record holder of a

26   majority 70% ownership interest in VEROS RES, will fairly and adequately

27   represent the interests of the owners in enforcing the rights, and seeking

28   equitable relief and damages, on behalf of VEROS RES.  Defendant First

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  American Real Estate Solutions, LLC ("FARES LLC") owns the remaining
2  30% interest in VEROS RES.

3      6.   Prior to filing this action, VEROS SW did not seek to secure the
4  agreement of the Management Committee of VEROS RES to involve it in
5  litigation.  From the time of the formation of VEROS RES through the filing
6  of this lawsuit, the Management Committee consisted of two
7  representatives from VEROS SW and one representative from FARES
8  LLC.  VEROS SW's representatives are Darius Bozorgi and Bijan Bozorgi,
9  respectively, its Chief Executive Officer and Chief Financial Officer.
10  FARES' Management Committee representative was George Livermore,
11  who was the President of Defendants FARES LLC and First American Real
12  Estate Solutions, L.P. ("FARES LP"), and later became the Group
13  President of the Property Services Group of First American Corporation
14  ("FIRST AMERICAN").  Mr. Livermore was actively involved in the wrongful
15  conduct alleged herein, as well as the unlawful acquisitions/mergers.  The
16  Operating Agreement for VEROS RES requires that any litigation brought
17  by VEROS RES must first be authorized through the unanimous written
18  consent of both of its members.  Since the only two members are VEROS
19  SW and Defendant FARES LLC, Plaintiffs assert that it would have been
20  futile to seek the written consent of FARES LLC to initiate this litigation.  In
21  addition, there exists reasonable doubt that Defendant FARES LLC is
22  disinterested and independent, or that the anticompetitive and unlawful
23  acts alleged herein were the product of a valid exercise of business
24  judgment. It was not reasonable to expect that FARES LLC would consent
25  to suing itself.  Significantly, Defendant FARES LLC and FARES LP filed a
26  Cross-Complaint against VEROS SW and VEROS RES on or about
27  December 20, 2006, in California Superior Court.  Defendant FIRST
28  AMERICAN is also named as a Cross-Complainant.  Further, a demand to

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1 the Management Committee at this stage for VEROS RES to file suit on its

2 own would have been futile because Defendants have already expressed

3 their antagonism to this derivative action by previously unsuccessfully filing

4 a motion before this Court to dismiss the Complaint.  Moreover, Plaintiffs

5 have repeatedly made efforts, through written and oral communications, to

6 inform Defendants of the ultimate facts giving rise to each cause of action

7 set forth herein.  This litigation is necessary to protect the interests of

8 VEROS RES and to obtain redress for the injuries it has suffered by

9 reason of Defendants' conduct.

10 II.

11 **NATURE OF THE ACTION AND TRADE AND COMMERCE**

12     7.  This case arises from Defendants' attempted monopolization of

13 the national market for Automated Valuation Models ("AVMs") (the

14 "national AVM market") and acquisition of at least two substantial

15 competitors in that market: BASIS100 Inc.  ("BASIS100") and CoreLogic

16 Systems, Inc.  ("CORELOGIC".)  AVMs are collateral risk assessment

17 computer tools that assess the value of residential real estate accurately,

18 efficiently, and effectively in order to facilitate real estate transactions.

19 Many of these AVMs are bundled and sold to end users through resellers

20 in the lucrative national AVM market.

21     8.  Defendant FIRST AMERICAN is a preeminent data provider for

22 AVMs in the national AVM market, Fidelity National Information Services

23 being its only recognizable competitor.  FIRST AMERICAN's dominant

24 market position in the data industry allows it to control how and when data

25 is delivered to AVM users and gives FIRST AMERICAN the first

26 opportunity to process that data before releasing it to competitors.  In this

27 way, FIRST AMERICAN exercises great control over what information is

28 processed by participants in the national AVM market.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

9. Further, Defendants FIRST AMERICAN, FARES LP and FARES LLC have also developed a successfully-marketed system ostensibly designed to allow resellers and end users of AVMs to test the accuracy and reliability of the AVMs they utilize.  This allows Defendants to exercise great control over industry perception of the accuracy of their AVM products.  Simply put, by controlling both the data and the testing, Defendants set themselves up to appear to prevail in any comparison of AVM products.

10.   VEROS SW was a developer of innovative AVMs.  In May 2004, FARES LLC enticed VEROS SW to enter into a Joint Venture and Contribution Agreement ("Joint Venture Agreement") to create a separate limited liability company, VEROS RES, ostensibly to facilitate and increase the volume of sales of VEROS SW's products in the national AVM market.  At the time, VEROS SW believed Defendants' representations made during negotiations that VEROS SW would benefit greatly from the efforts of Defendants' robust sales force.

11.   Accordingly, in reliance on those misrepresentations, VEROS SW transferred its contracts, reseller customer lists, assets, properties, rights, services, and interests constituting the provision of AVM reports, to VEROS RES.  Defendant FARES LP then entered into an exclusive written Redistributor Agreement (the "Redistributor Agreement") with VEROS RES to redistribute VEROS RES' products to resellers.

12.   These Agreements were primarily negotiated by FIRST AMERICAN and FARES LLC through FARES' Group Executive Vice President of Business Development, Jerald Hoerauf and FARES LLC's President, George Livermore, and FIRST AMERICAN's Property Information Services Group President, Dennis Gilmore,  with Plaintiff VEROS SW's management.

1       13.    At the time the Agreements were negotiated, Plaintiffs were led

2 to  believe that the Agreements were intended to create a mutual beneficial

3 business relationship between VEROS RES and FARES LP, to facilitate

4 VEROS SW's joint venture with FARES LLC, and most importantly to

5 increase the output of VEROS SW's AVMs in the national AVM market.

6       14.    However, unbeknownst to Plaintiff, Defendants intended to use

7 the Agreements in conjunction with subsequent acquisitions of two other

8 major participants in the national AVM market to monopolize the national

9 AVM market by restricting output of VEROS SW's higher-quality AVMs,

10 and stifling and eliminating competitive innovation.

11       15.    Only a few weeks after FARES LP signed the Redistributor

12 Agreement, Defendants first disclosed to VEROS SW and VEROS RES

13 that Defendants had already been planning to acquire BASIS100, an

14 industry pioneer which sold competitive products and services, and

15 occupied a significant percentage share of the national AVM market.  The

16 acquisition of BASIS100 flouted the asserted purpose of the Redistributor

17 Agreement because it gave FARES LP an incentive to promote only

18 BASIS100 products and to restrict output of VEROS RES' AVM products.

19 FIRST AMERICAN/FARES acquired 100% of the equity of BASIS100

20 through a cash payment of approximately $30 million to holders of

21 BASIS100 common stock, warrants and options.  Additionally, FIRST

22 AMERICAN was to redeem outstanding BASIS100 convertible debentures

23 for a cash payment of approximately $11 million.  The acquisition was

24 expected to result in significant cost synergies that would result in total pre-

25 tax earnings of $10 million on an annualized basis.  The acquisition was

26 completed on September 8, 2004.  FIRST AMERICAN publicly reported

27 that its acquisition of BASIS100 made "First American the nation's largest

28 provider of AVMs."

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

16.     More importantly, the acquisition of BASIS100, in combination with Defendants' own preexisting market share and the newly executed Redistributor Agreement, which significantly controlled redistribution of VEROS RES' products, gave Defendants control of a significant percentage of the national AVM market.  Defendants used their market share and the Redistributor Agreement to attempt to monopolize the national AVM market by restricting output of VEROS RES' advanced products, and in essence placing it on a shelf.

17.     In furtherance of its attempt to monopolize the national AVM market, Defendant FIRST AMERICAN also acted to, and did, acquire CORELOGIC which occupied a unique market position that enabled CORELOGIC to largely determine the placement of AVMs in popular cascade programs that run and compare a series of preselected AVMs to ensure reliable valuations.  The acquisition of CORELOGIC gave FIRST AMERICAN control of at least 50% of the national AVM market and allowed it to exclude innovative AVMs, including VEROS RES' AVMs, from CORELOGIC's popular cascade programs.  In fact, from the time that FIRST AMERICAN announced its intention to acquire CORELOGIC, CORELOGIC began to artificially elevate the placement of Defendants' AVMs within the popular cascade programs to the detriment of VEROS RES' competitive AVM products.  In January 2007, FIRST AMERICAN merged its FARES LP division, a part of its FARES LLC subsidiary, with CORELOGIC.  In 2006, FARES LP and CORELOGIC generated approximately $252 million and $74 million in revenues, respectively.  The new combined company, First American Core Logic, is 82% majority owned by FIRST AMERICAN through its FARES LLC joint venture with Experian Group Limited.  Mr. Livermore was appointed CEO and/or President of First American Corelogic.  FIRST AMERICAN owns 80% of

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  FARES LLC and Experian owns 20%. CORELOGIC's stockholders,

2  comprised of its management team and TA Associates, hold an 18%

3  economic interest FIRST AMERICAN CORELOGIC. The merger thus far

4  was FIRST AMERICAN's largest transaction in a series of analytic

5  company strategic acquisitions. As part of that transaction, in addition to

6  the Class A shares, CORELOGIC's stockholders received cash

7  consideration of $100 million.

8      18.   By securing through acquisition at least 50% of the national

9  AVM market, controlling the selection of AVMs inputted into

10  CORELOGIC's and FIRST AMERICAN's cascade programs, and by using

11  the exclusive Redistributor Agreement against VEROS RES to keep it out

12  of the market, Defendants acted to restrict output of VEROS RES' AVM

13  products in an effort to drive VEROS RES out of business (or weaken

14  VEROS SW and/or VEROS RES to make them an easy target of

15  Defendants' acquisition efforts) all with the intent to monopolize the

16  national AVM market and flood that market with lower-quality AVMs.

17      19.   Had Plaintiff VEROS SW known that Defendants planned a

18  series of strategic acquisitions of AVM competitors and made various

19  misrepresentations in connection with the formation of the joint venture,

20  VEROS SW would not have entered into the VEROS RES arrangement,

21  transferred its AVM products and contracts to VEROS RES, or entered into

22  the exclusive Redistributor Agreement with Defendant FARES LP.

23  Instead, VEROS SW would have remained a viable competitor impacted

24  and injured by Defendants' antitrust violations alleged herein.

25      20.   Plaintiffs now seek to recover their losses arising from

26  Defendants' attempted monopolization, and to prevent any further attempts

27  by Defendants to monopolize the national AVM market and to force

28

1 | Defendants to divest their interests in BASIS100 and/or CORELOGIC to
2 | restore competition in the market.

3 | ### III.

4 | ### THE PARTIES

5 |     21.    Real Party-In-Interest and nominal defendant VEROS RES, is,
6 | and at all times mentioned herein was, a limited liability company
7 | organized and existing under the laws of the State of Delaware and doing
8 | business in Orange County, California.  VEROS RES licenses and
9 | distributes sophisticated predictive technology models which allow decision
10 | makers within the mortgage industry (such as credit risk assessors at
11 | lending institutions) to assess the value of residential real estate accurately
12 | and efficiently.  VEROS RES provides state of the art software and data
13 | products designed to deliver reliable decision management solutions.
14 | VEROS RES is located at 2333 N.  Broadway, Santa Ana, California
15 | 92706.

16 |     22.    Plaintiff VEROS SW in both its individual capacity, and
17 | derivatively on behalf of real party-in-interest VEROS RES, asserts the
18 | claims herein.  VEROS SW is a corporation organized and existing under
19 | the laws of the State of California and doing business in Orange County,
20 | California.  VEROS SW specializes in developing sophisticated predictive
21 | technology software, including but not limited to, its AVMs for residential
22 | real estate.  VEROS SW licenses to VEROS RES the predictive
23 | technology which VEROS RES distributes and markets.  VEROS SW is
24 | the record holder of an approximately 70% majority ownership interest in,
25 | and is a member of, VEROS RES.  VEROS SW brings this action both
26 | directly and derivatively on behalf of VEROS RES.

27 |     23.    Defendant FIRST AMERICAN is a corporation organized and
28 | existing under the laws of the State of California and doing business in

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Orange County, California.  Its corporate headquarters are located at 1
2  First American Way, Santa Ana, California 92707.  FIRST AMERICAN is a
3  Fortune 500 company and is the largest data and business information
4  provider in the United States.  FIRST AMERICAN's total revenues were
5  approximately $8.5 billion in 2006.  FIRST AMERICAN has in excess of
6  550 subsidiaries.  FIRST AMERICAN serves as a preeminent data provider
7  for AVMs throughout the United States, and is a controlling member of
8  FARES LLC.

9       24.    Defendant FARES LP is, and at all times mentioned herein,
10  was a limited partnership, organized and existing under the laws of the
11  State of Delaware and doing business in Orange County, California.  Its
12  headquarters are located at 4 First American Way, Santa Ana, California
13  92707.  FARES LP is the nation's largest provider of property and
14  ownership information, analytics and services.  FARES LP, and its parent
15  FIRST AMERICAN, claim to be the number one supplier of AVMs in the
16  United States.  FARES' database covers more than 3,000 counties
17  representing over 95% of the nation's real estate transactions.  FARES
18  LLC is the general partner of FARES LP, and each of these entities exerts
19  influence over the other.  FIRST AMERICAN is the parent company of
20  FARES LP and exerts control over FARES LP's actions with respect to the
21  Redistributor Agreement it entered into with VEROS RES -- the entity
22  created as part of FARES LLC's and VEROS SW's joint venture.
23  Defendant FIRST AMERICAN characterizes FARES LP as "a member of
24  the FIRST AMERICAN Family of Companies."  FARES LP is in the
25  business of marketing and promoting AVMs to resellers for use by financial
26  institutions and other mortgage loan purchasers.  After its merger with
27  CORELOGIC in January 2007, the new combined entity is now known as
28  First American CoreLogic.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

25. Defendant FARES LLC is, and at all times mentioned herein was, a limited liability company, organized and existing under the laws of the State of California, and doing business in Orange County, California. Its headquarters are located at 4 First American Way, Santa Ana, California. FARES LLC is the general partner of FARES LP. FIRST AMERICAN is the parent company of FARES LLC. FIRST AMERICAN is a member of FARES LLC, and holds a controlling interest therein, and FIRST AMERICAN dictates and controls FARE LLC's actions with respect to FARES LLC's joint venture with VEROS SW. Defendant FIRST AMERICAN characterizes FARES LLC as "a member of the First American Family of Companies." FARES LLC was formed in approximately 1997.

## IV.

## CAUSES OF ACTION

## COUNT ONE

### (Section 2 of the Sherman Act)

### ATTEMPTED MONOPOLIZATION

26. Plaintiffs hereby incorporate by reference each and every allegation contained in Paragraphs 1 through 25 of this Second Amended Complaint as though fully set forth herein.

27. Count One of this Second Amended Complaint is brought pursuant to Section 2 of the Sherman Act (15 U.S.C. § 2) alleging that Defendants, through the use of predatory or exclusionary conduct and a series of strategic acquisitions, have specifically intended to monopolize the national market for AVM products and services. There also exists a dangerous probability that Defendants will successfully monopolize the AVM market.

28. The relevant geographic market in this case is the United States as a whole. The relevant product market is the business of

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   developing and selling AVM products and services.  There may also exist

2   separate and distinct relevant submarkets for the sales of AVM products to

3   resellers and direct to end users.

4       29.    The development and sale of AVM products and services are in

5   and directly affect interest commerce.  The antitrust violations alleged

6   herein have had, and unless restrained by the Court, will continue to have

7   the effect of substantially suppressing, distorting, eliminating and

8   interfering with competition in the AVM market in the flow of interstate

9   commerce.

10      30.    Defendants specifically planned, among other things, to use

11   FARES LP's exclusive license to limit the redistribution of VEROS RES'

12   AVMs through resellers in order to reduce competition in the national AVM

13   market.  Defendants misleadingly disparaged VEROS RES' products to

14   resellers and incentivized FARES LP's sales personnel to promote

15   Defendants' own inferior products (including BASIS100 products) over

16   VEROS RES' valuation reports and services.  Defendants' instructed their

17   technical support staff to construct the AVM cascade, and the placement of

18   VEROS RES' AVM products in such cascades, in a discriminatory manner

19   such to limit, reduce, and/or exclude the sales and utilization of VEROS

20   RES' AVMs through the cascades.  Defendant FIRST

21   AMERICAN/CORELOGIC offered its testing system, fueled with its own

22   data, to increase Defendants' dominance of the national AVM market by

23   setting up FIRST AMERICAN's testing system to create a false impression

24   that Defendants' AVMs produce more accurate reports than other AVMs,

25   such as those offered by VEROS RES.  Defendants used these strategies

26   to restrict the output of innovative AVMs in the national AVM market and to

27   position themselves to monopolize that market.

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   31.   Defendants were able to use the Redistributor Agreement to

2   strengthen their marketing power because the Agreement granted FARES

3   LP an exclusive license to redistribute VEROS RES' products to resellers

4   with only two exceptions.  The Redistributor  Agreement permitted VEROS

5   RES to solicit resellers directly only where (a) FARES LP elected to forego

6   entering into an agreement with a reseller or vice versa, or (b) marketplace

7   conditions existed that required VEROS RES to be the coordinator of an

8   agreement with a given redistributor.  However, the Redistributor

9   Agreement made clear that even under either of these exceptional

10   circumstances, FARES LP retains control of the conditions of any

11   agreement VEROS RES wishes to make with a reseller, and can thus

12   make any such agreement impractical.

13   32.   Once Defendants locked up VEROS RES into the exclusive

14   Redistributor Agreement and acquired the assets of BASIS100,

15   Defendants began in earnest to market and promote Defendants' products

16   over VEROS RES' AVMs.  Defendants accomplished this by, among other

17   things, encouraging FARES LP's sales personnel to misrepresent to

18   resellers that Defendants products were superior to VEROS RES' goods

19   and services and to "push" Defendants' AVM products by, among other

20   things, manipulating testing data to create a false impression of

21   performance.  Subsequently, Defendants proceeded to discriminatorily

22   manipulate the placement of VEROS RES AVMs within Defendants'

23   cascades.

24   33.   Because FARES LP had an exclusive license to redistribute

25   VEROS RES' products, VEROS RES could not actively market its own

26   products to resellers without FARES LP's approval.  Instead, VEROS RES

27   acted in good faith and turned over its active resellers to FARES LP.

28   However, to VEROS RES' surprise, FARES LP failed to solicit and sell

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  VEROS RES' products to new resellers.  In fact, VEROS RES soon began
2  to receive calls from resellers wanting to resell VEROS RES' products.
3  These resellers stated that FARES LP would not return their calls and
4  strongly discouraged the use of VEROS RES' products.  FARES LP
5  deliberately and unreasonably delayed and hindered VEROS RES' ability
6  to sell its products to interested resellers who approached VEROS RES in
7  order to drive VEROS RES' products out of the national AVM market.
8  Despite FARES LP's unreasonable actions, VEROS RES remained true to
9  the Redistributor Agreement by refraining from actively marketing its
10  products to resellers who did not approach VEROS RES themselves.

11      34.    FARES LP's delay in authorizing VEROS RES to enter into any
12  agreements with resellers anticompetitively restricted the output of VEROS
13  RES' products and caused VEROS RES' sales to languish.  It was
14  Defendants' intention both before and after the Redistributor Agreement
15  was signed, not to sell VEROS RES' products as promised and
16  contemplated by VEROS SW.

17      35.    Defendants performed all the actions alleged herein with the
18  specific intent to monopolize the national AVM market by driving out
19  competition from VEROS RES' AVMs.

20      36.    Defendants engaged in predatory or anticompetitive conduct
21  directed toward accomplishing their unlawful purpose of attempting to
22  monopolize the national AVM market by:

23          (a)  deliberately failing to disclose to Plaintiffs, Defendants'
24  intention to acquire the assets of BASIS100;

25          (b)  obtaining for FARES LP the exclusive Redistributor
26  Agreement to redistribute VEROS RES' products that FARES LP intended
27  to improperly use, and used, to restrict, reduce or retard sales of VEROS
28  RES' AVM products;

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 13 -

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1          (c)  acquiring BASIS100 after locking VEROS RES into the

2 Redistributor Agreement that was exclusive in form and practice;

3          (d)  failing to perform (or encouraging FARES LP not to perform)

4 its payment obligations under the Redistributor Agreement thereby

5 depriving Plaintiffs of cash reserves which Plaintiffs could have used to

6 develop and/or improve competitive AVM products;

7          (e)  acquiring CORELOGIC on or about January 31, 2007 in order

8 to further stifle innovation and further dominate the national AVM market by

9 controlling the preselection and ordering of AVMs inputted into

10 CORELOGIC's popular cascade programs;

11          (f)  continuing to use the exclusive Redistributor Agreement after

12 the BASIS100 and CORELOGIC acquisitions to restrict VEROS RES'

13 access to and penetration of the market; and

14          (g)  refusing to continue to sell and supply data to VEROS RES.

15       37.  Defendants' actions as alleged herein have created a

16 dangerous probability that Defendants will successfully monopolize the

17 national AVM market as Defendants already occupy at least 50% of that

18 market.  FIRST AMERICAN now has sales distribution of AVMs to

19 approximately 600,000 users.

20       38.  Further, Defendants undertook the actions as alleged herein,

21 knowing that significant and high barriers to market entry would prohibit

22 would-be developers of innovative, high-quality AVMs, akin to those

23 produced by VEROS SW, from entering the national AVM market.  These

24 barriers to entry include, among other things:

25          (a)  a substantial up-front capital investment required to penetrate

26 the national AVM market;

27          (b)  a significant lead time in developing and testing AVM

28 programs before introduction;

- 14 -

1        (c)   limited availability of personnel with specialized knowledge;

2        (d)   a significant time lag in developing a reputation such that an

3   entrant's AVM product can successfully market to resellers and end users;

4        (e)   existence of entrenched competitors such as FIRST

5   AMERICAN with approximately 600,000 existing users;

6        (f)   patents, copyrights and other intellectual property rights

7   relating to AVM products;

8        (g)   requirement of a nationwide sales and distribution network;

9   and

10        (h)   access to reliable and comprehensive data bases.

11        39.   To succeed in the national AVM market, a company pushing an

12   innovative, higher-quality product would first have to invest significant

13   financial resources to develop a superior AVM.  That company would also

14   need to have access to and the ability to scrub enormous amounts of data

15   -- the majority of which is controlled by FIRST AMERICAN -- to ensure the

16   accuracy of its AVM.  A potential entrant would then need to successfully

17   test run the AVM over several years before it could develop sufficient

18   credibility among end users and resellers in the national AVM market.

19   Until a new AVM product is proven over the course of 2 to 5 year time

20   period, an entrant could not hope to develop a track record and enough

21   momentum to profitably market a new high-quality AVM.

22        40.   Significant barriers to expansion also exist in the national AVM

23   market because its current structure leaves only a handful of smaller

24   companies like VEROS RES to produce innovative AVMs.  Over time,

25   Defendant FIRST AMERICAN and a handful of other large corporations

26   with significant market share have come to dominate the industry by

27   acquiring smaller, more innovative developers of superior, higher-quality

28   AVMs.  The unfortunate result has been that innovation has stagnated and

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  end users suffer because they are left to choose only from among lower-
2  quality AVMs such as those that Defendants falsely promote to be
3  comparable to higher-quality AVMs, such as those produced by VEROS
4  RES.

5  　　　41.　The aforesaid conduct of Defendants has produced antitrust
6  injury, and unless restrained, will continue to produce at least the following
7  anticompetitive and exclusionary effects upon competition in interstate
8  commerce:

9  　　　(a)　competition in the development of AVM products and
10  services has been substantially and unreasonably restricted, lessened,
11  foreclosed and eliminated;

12  　　　(b)　Plaintiffs have been neutralized as significant competitors in
13  the national AVM market;

14  　　　(c)　barriers to entry into the market for AVM products and
15  services have been raised;

16  　　　(d)　consumer choice will be significantly limited as to selection,
17  price and quality of AVM products;

18  　　　(e)　consumer access to VEROS RES' competitive AVM products
19  will be artificially restricted and reduced and its AVM products will continue
20  to be excluded from CORELOGIC's popular cascade programs; and

21  　　　(f)　the market for development and sale of AVM products will
22  continue to be artificially restrained or monopolized.

23  　　　42.　By reason of, and as a direct and proximate result of the
24  violations alleged herein, Plaintiffs have been, and will continue to be
25  immediately and irreparably injured in their business and property by
26  Defendants' continuing violations.  Unless Defendants are restrained by an
27  appropriate order of this Court, Plaintiffs will continue to suffer an inability
28  to compete fully and fairly in the AVM market, expand and grow in the AVM

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   market, loss of their revenues, loss of profits they would otherwise have

2   made, loss of substantial goodwill and reputation normally attached to

3   profitable enterprises, and a reduction in the value of their businesses as

4   going concerns.  The above-described injury constitutes cognizable

5   antitrust injury.  Defendants' anticompetitive conduct has caused

6   substantial damages to Plaintiffs in an amount subject to proof at trial.

7   Plaintiffs have not calculated the precise extent of their past damages and

8   cannot now estimate with precision the future damages which continue to

9   accrue and when they do so, will seek leave of the Court to insert the exact

10   amount of the damages sustained herein.

11                                **COUNT TWO**

12                       **(Section 7 of the Clayton Act)**

13          **Divestiture of Unlawful Merger/Acquisition**

14         43.    Plaintiffs hereby incorporate by reference each and every

15   allegation contained in Paragraphs 1 through 42 of this Second Amended

16   Complaint as though fully set forth herein.

17         44.    Count Two of this Second Amended Complaint is brought

18   pursuant to Section 7 (15 U.S.C. § 18) of the Clayton Act alleging that

19   Defendants' acquisition/merger of BASIS100 and CORELOGIC is unlawful

20   and has had the effect of substantially lessening competition in the national

21   AVM market, and/or has had the tendency to create a monopoly.  Such

22   acquisitions have increased market concentration by reducing the already

23   limited number of viable participants, thereby causing antitrust injury to

24   Plaintiffs.  Increased concentration in the market has enhanced

25   Defendants' ability to engage in predatory conduct, limit choice, and raise

26   prices -- all to the detriment of consumers.

27         45.    The actual and likely continued effect of Defendant FIRST

28   AMERICAN's acquisition of BASIS100 and CORELOGIC (and possibly

                                   - 17 -

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  others) has been and will continue to substantially lessen competition and

2  to create a monopoly in interstate trade and commerce in the Untied States

3  for the production and sale of products and services utilized in the AVM

4  market.  High and substantial entry barriers exist to successful and

5  sustained entry into the national AVM market.

6      46.    This vertical integration accomplished through an unlawful

7  succession of acquisitions, including BASIS100 and CORELOGIC, taken

8  together with the bundled pricing, FIRST AMERICAN's refusal to continue

9  to supply data to Plaintiff VEROS RES, market disparagement of

10  competing products, and other exclusionary practices, constitutes

11  predatory or anticompetitive conduct which has the tendency to restrain

12  and lessen competition.

13      47.    Unless the Court orders a divestiture of the assets and

14  technology acquired from BASIS100 and/or CORELOGIC (pursuant to

15  Section 16 of the Clayton Act), and/or the reconstitution of an unaffiliated

16  competitive entity in the market, the following anticompetitive effects are

17  likely to occur and/or continue to exist:

18      (a)   actual and potential competition between Plaintiffs and

19  Defendants will be lessened or eliminated in the United States and

20  Defendants will emerge with monopoly or market power;

21      (b)   in the long term, prices for AVM products and services are

22  likely to rise;

23      (c)   the incentive to timely innovate and improve AVM products

24  will be reduced;

25      (d)   entry into the AVM market will be deterred; and

26      (e)   end users and resellers of AVM products will be deprived of a

27  choice of AVM vendors and will be forced to deal with Defendants.

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request entry of judgment against Defendants as follows:

1. For compensatory damages in an amount subject to proof at trial;

2. For treble the award of actual damages and recovery of reasonable attorneys' fees and costs/expenses pursuant to 15 U.S.C. § 15;

3. For post-judgment interest as provided by law;

4. That Defendants' acquisition of BASIS100 and/or CORELOGIC be adjudged and decreed to violate Section 7 of the Clayton Act and Section 2 of the Sherman Act, and that Defendant FIRST AMERICAN be required to divest itself of the assets acquired from BASIS100 and CORELOGIC and to reconstitute a new and effective competitor in the national AVM market, and for additional injunctive relief to restore or equalize competition in the relevant market; and

5. Such other and further relief this Court deems just and proper.

Dated:   February 7, 2008

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
DONALD R. PEPPERMAN

By: _____
MAXWELL M. BLECHER
Attorneys for Plaintiffs VEROS
SOFTWARE, INC. and VEROS
REAL ESTATE SOLUTIONS,
LLC

34781.1

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 19 -

**VERIFICATION**

I, Darius Bozorgi, DECLARE THAT:

I have read the foregoing Verified Second Amended Complaint Seeking Damages and Equitable Relief for: 1) Attempted Monopolization in Violation of Section 2 of the Sherman Act; and 2) Divestiture for Violation of Section 7 of the Clayton Act, and know its contents.

I am the President and Chief Executive Officer of Veros Software, Inc., a plaintiff in this action, and am authorized to make the verification for and on its behalf, and I make this verification for that reason. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, and that this verification is executed on February 6, 2008, at Santa Ana, California.

Darius Bozorgi

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action; my business address is 515 S. Figueroa St., 17th Floor, Los Angeles, California 90071.

On **February 7, 2008**, I served the foregoing document described as: **[PROPOSED] VERIFIED SECOND AMENDED COMPLAINT SEEKING DAMAGES AND EQUITABLE RELIEF FOR: 1) ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT; AND 2) DIVESTURE FOR VIOLATION OF SECTION 7 OF THE CLAYTON ACT** on the interested parties in this action pursuant to the Court's electronic filing and service system as follows:

Mailing Information for a Case 8:06-cv-01130-JVS-AN

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

Maxwell M Blecher
mblecher@blechercollins.com

James R Noblin
rnoblin@blechercollins.com

Robert E Palmer
RPalmer@gibsondunn.com,ecastillo
@gibsondunn.com

Erich D Schiefelbine
eschiefelbine@gibsondunn.com,tstep
hens@gibsondunn.com

Todd Christopher Bouton
tcb@paynefears.com,gsquitieri@payn
efears.com,ir.courtnotices@paynefear
s.com

Kelly A Roosevelt
karoosevelt@gibsondunn.com,mpeck
@gibsondunn.com

Anne A Uyeda
auyeda@gibsondunn.com,ecastillo@g
ibsondunn.com

Manual Notice List

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing).

Tracy Lorraine Marchant
Gibson Dunn and Crutcher
333 South Grand Avenue
Los Angeles, CA 90071

☒(By Mail): As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing affidavit.

**EXECUTED ON February 7, 2008**, at Los Angeles, California.

☒ (Federal): I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_Lorelei L. Gerdine_
Lorelei L. Gerdine